# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 07-2920
_____

| | |
|---|---|
| United States of America, | * |
| | * |
| Appellee, | * |
| | *    Appeal from the United States |
| v. | *    District Court for the Eastern |
| | *    District of Missouri. |
| Tron Kent, | * |
| | * |
| Appellant. | * |

_____

Submitted:  March 10, 2008
Filed:  July 7, 2008
_____

Before MURPHY, ARNOLD, and BENTON, Circuit Judges.
_____

BENTON, Circuit Judge.

    Tron Kent was convicted of two counts of being a felon in possession of a firearm, two counts of possessing a firearm in furtherance of a drug trafficking offense, one count of possessing cocaine base with intent to distribute, one count of possessing child pornography, and one count of producing child pornography.  The district court[1] sentenced Kent to life in prison.  Kent appeals arguing his motion to suppress should have been granted, expert DNA testimony and his prior convictions should have been excluded, his motion for acquittal should have been granted, the jury

___

[1] The Honorable Jean C. Hamilton, United States District Judge for the Eastern District of Missouri.

instructions were erroneous, and life imprisonment for a drug crime violates the Eighth Amendment. Having jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, this court affirms.

I.

On January 20, 2004, a Sikeston detective received a call from a new confidential informant. The informant stated that a black man known as "TKO" just left his house wearing a puffy blue coat, with a black .380 pistol he believed was stolen, and was walking south on Westgate Street, an area known for "pretty consistent" crack cocaine problems. The detective recognized the name TKO because another informant had made a controlled buy from him eight months earlier. The detective called the Sikeston dispatcher, requesting an officer check out the tip. An officer was dispatched to Westgate Street, where he noticed a black man, later identified as Tron Kent, walking south and wearing a blue puffy coat. The officer asked him to step over to the car, and told him he fit the description of a person reported to be carrying a gun. When the officer asked if he could pat Kent down, he said ok, and put his hands on the car. As another officer moved toward Kent to pat him down, he shoved his hands into his coat pockets and walked to the front of the patrol car as if walking away. The first officer drew his gun, ordering Kent to put his hands back on the car. The second officer patted him down, finding a gun. Kent was arrested for carrying a concealed weapon. During the frisk, the officers found two bags of crack cocaine.

When Kent arrived at the police station, the detective recognized him as TKO. Kent asked to speak to the detective, and after receiving *Miranda* warnings, admitted possessing the firearm and purchasing the crack to resell. Kent was charged with being a felon in possession of a firearm (Count I), and possessing a firearm in furtherance of a drug trafficking crime (Count II).

In a separate incident on May 8, 2006, Charleston police were looking for Kent to serve a felony arrest warrant. An officer familiar with Kent's appearance received an anonymous tip that he was driving a black Dodge Intrepid near Marshall Street. Proceeding there, the officer saw a black Dodge Intrepid being driven by a person he believed was Kent. The officer could not see Kent's face, but could see that the driver was stocky and had braids like Kent. The officer pulled the car over, and found that Kent was in fact the driver. Kent was arrested on the felony warrant. Officers seized a cell phone from the car, which Kent acknowledged was his.

The license plate information indicated that the car was registered to Sally Doyle. Officers went to her house to investigate why Kent was driving her car. She told the officers that her 16-year-old daughter, Amy, was dating Kent, that Amy and Kent lived with her, and that he had permission to drive the car. The officers asked Sally and Amy Doyle for permission to search Amy's room; both consented. The officers seized a fully-loaded .22 caliber revolver from the night stand, $540 cash and 6.5 grams of crack cocaine from a box on a television stand, four bags with 65.9 grams of crack cocaine from a jewelry box in a closet, an ashtray with cigarette butts, bed sheets, men's clothes, a title application, and a set of time cards.

At the police station, Kent eventually admitted being in Doyle's house, but denied having been in Amy's room. He allowed officers to take a swab for DNA testing. Kent's DNA was found on the cigarette butts and bed sheets from Amy's room. Pictures of Kent and Amy having sex were found on his cell phone.

Kent was charged (in the same indictment as the previous charges) with possession with intent to distribute 50 grams or more of crack cocaine (Count III), possession of a firearm in furtherance of a drug trafficking crime (Count IV), being a felon in possession of a firearm (Count V), production of child pornography (Count VI), and possession of child pornography (Count VII).

A jury found Kent guilty on all counts. The district court sentenced him to life in prison, with 120 months on Counts I and VII, life on Counts III and V, 360 months on Count VI, and life on Counts II and IV.

## II.

Kent argues that the physical evidence and his statements should be suppressed because the police lacked reasonable suspicion to stop him on both occasions. On the denial of a motion to suppress, this court reviews the district court's factual findings for clear error and its legal conclusions de novo. ***United States v. Solomon***, 432 F.3d 824, 827 (8th Cir. 2005).

"[T]he conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." ***Terry v. Ohio***, 392 U.S. 1, 20 (1968). A police officer may briefly detain someone if there is a reasonable suspicion that criminal activity is afoot. ***Id.*** at 30. This court examines the "totality of the circumstances" to determine if the officer had a "'particularized and objective basis' for suspecting legal wrongdoing." ***United States v. Arvizu***, 534 U.S. 266, 273 (2002), *citing* ***United States v. Cortez***, 449 U.S. 411, 417-418 (1981). Observations of the officers are considered "as a whole, rather than as discrete and disconnected occurrences." ***United States v. Poitier***, 818 F.2d 679, 683 (8th Cir. 1987). This allows officers to draw on their own experience and specialized training, and to make inferences that "might well elude an untrained person." ***Arvizu***, 534 U.S. at 273, *quoting* ***Cortez***, 449 U.S. at 418.

### A.

Kent argues that there was no reasonable suspicion to stop him. The district court[2] found that as the officers approached Kent, they "had the following collective

---

[2] Adopting the report and recommendations of the Honorable Lewis M. Blanton, United States Magistrate Judge.

knowledge of 'specific and articulable facts along with rational inferences' from those facts:" (1) the information was recent, (2) the information was based on first-hand personal observation, (3) TKO was wearing a blue puffy coat, (4) TKO was walking south on Westgate Street, (5) TKO was reported to have a black .380 caliber pistol in his pocket, (6) the pistol was reported to be stolen, (7) the detective knew that TKO had previously sold crack cocaine, (8) Westgate Street "still had narcotics problems," (9) Kent fit TKO's description, and (10) if Kent had a weapon, it was concealed.

Kent challenges findings (7) and (8). The detective testified that upon receiving the tip about TKO, he remembered previously conducting a controlled buy from him, though he did not remember that TKO was Kent's nickname until Kent was brought to the police station. The district court's finding that the detective "knew TKO had sold crack on another occasion in 2003" is not clearly erroneous. As the tip only mentioned TKO, it is irrelevant that the detective did not associate the nickname TKO with Kent until later.

The detective also testified that the Westgate Street area "had slowed down . . . but we still had narcotics problems in that area . . . mainly crack cocaine . . . it was pretty consistent." The district court's finding is thus not clearly erroneous.

Kent argues that the police did not have reasonable suspicion to stop him, because the confidential informant did not have a proven track record of reliability, and therefore, must be treated like an anonymous tipster. This court does not agree. Though less reliable than informants with a proven record, unproven informants are more reliable than anonymous tipsters because the police can hold them responsible for false information. *Cf.* ***Florida v. J.L.***, 529 U.S. 266, 270 (2000) (a tip from known informants is more reliable because their reputation can be assessed and they can be held responsible for fabrications); ***United States v. Salazar***, 945 F.2d 47, 50-51 (2nd Cir. 1991) (face-to-face informants are generally more reliable than anonymous tipsters because they can be held accountable for false information). Here, the informant had been enlisted by the detective to be a confidential informant, and therefore, could be held accountable by the detective for false information. The

informant here was also more reliable than an anonymous tipster because the police were able to identify his basis of knowledge: that TKO had just left his house. *See* **Alabama v. White**, 496 U.S. 325, 329 (1990) (anonymous tipsters are less reliable because the tip usually gives no indication of the basis for the caller's predictions), *citing* **Illinois v. Gates**, 462 U.S. 213, 227 (1983).

The police verified some of the informant's information before stopping Kent. *See* **United States v. Brown**, 49 F.3d 1346, 1349 (8th Cir. 1995) (unproven informant requires some independent verification to establish reliability). Kent was wearing the clothing, walking the street, in the direction the informant reported. As the informant here was not anonymous, less verification was required. *Cf.* **J.L.**, 529 U.S. at 271 ("All the police had to go on in this case was the bare report of an *unknown, unaccountable* informant *who neither explained how he knew* about the gun nor supplied any basis for believing he had inside information about J.L.") (emphasis added).

The seizure in this case did not occur until the officer drew his gun. *See* **Brendlin v. California**, 127 S.Ct. 2400, 2405 (2007) (a person is seized when the police "'by means of physical force or show of authority," terminates or restrains his freedom of movement"), *quoting* **Florida v. Bostick**, 501 U.S. 429, 434 (1991). Until then, the encounter was consensual because Kent voluntarily engaged with the police. Therefore, Kent's reaction to the officer's attempted pat down is also relevant to reasonable suspicion. After first agreeing to the pat down, Kent "immediately took his hands off of the hood of the car, shoved them in his coat pocket, and made a gesture like he was going to leave." While this conduct does not necessarily indicate criminal behavior, when combined with the tip, it provides reasonable suspicion for a *Terry* stop. *See* **United States v. Sokolow**, 490 U.S. 1, 9 (1989) (series of innocent actions can combine to form reasonable suspicion).

Kent also challenges the district court's finding that "there was a danger and immediacy involved in this factual situation" which warranted the officer drawing a weapon. The tip indicated Kent had a gun in his pocket, and he placed his hands in

his pocket as he walked away. The district court's finding that the officer was justified in drawing a gun and frisking Kent is not clearly erroneous. *See* **Terry**, 392 U.S. at 24 (1968) ("When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous . . . [he may] take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.").

B.

Kent argues that the police lacked reasonable suspicion to stop his car on May 8, 2006. "When police have a reasonable suspicion, grounded in specific and articulable facts, that a person they encounter was involved in or is wanted in connection with a completed felony, then a *Terry* stop may be made to investigate that suspicion." **United States v. Hensley**, 469 U.S. 221, 229 (1985). Due to the outstanding felony arrest warrant, the police had probable cause to believe that Kent had committed a felony, and to arrest him when found. *See* **Steagald v. United States**, 451 U.S. 204, 213 (1981) ("[T]he warrant embodied a judicial finding that there was probable cause to believe the [defendant] had committed a felony."). Therefore, the only question is whether the officer had a reasonable suspicion that Kent was in the car. *See* **United States v. Risse**, 83 F.3d 212, 217 (8th Cir. 1996) (officer needs reasonable belief only that subject of arrest warrant is present in order to serve warrant at third party's residence).

The officer testified that he received an anonymous tip that Kent was driving a black, Dodge Intrepid, near Marshall Street. When the officer went to the Marshall street area, he saw a black Dodge Intrepid, being driven by a black male with his hair in braids, like Kent, and who was stocky, like Kent. Although the tip was anonymous, the officer's sighting of the car in the same area, and the driver matching Kent's appearance, is reasonable suspicion to believe that Kent was driving the vehicle. The officer did not violate Kent's Fourth Amendment rights. *See* **Adams v. Williams**, 407 U.S. 143, 146 (1972) ("A brief stop of a suspicious individual, in order to determine

his identity . . . may be most reasonable in light of the facts known to the officer at the time.").

### III.

Kent raises two evidentiary issues; his prior convictions should have been excluded, and the expert DNA testimony was not relevant. Evidentiary rulings are reviewed for an abuse of discretion. *United States v. Jara*, 474 F.3d 1018, 1022 (8th Cir. 2007).

### A.

Evidence of prior bad acts is "not admissible to prove the character of a person in order to show action in conformity therewith," but is admissible to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." **Fed. R. Evid. 404(b)**. Evidence of prior bad acts is admissible if it is (1) relevant to a material issue, (2) similar in kind and reasonably close in time, (3) sufficient to support a jury finding by a preponderance of the evidence, and (4) more probative than prejudicial. *See* **United States v. Dobynes**, 905 F.2d 1192, 1194-95 (8th Cir. 1990). Evidence of two of Kent's prior convictions for distribution of crack cocaine were introduced at trial. For one conviction, an officer testified to the facts of the offense, including Kent's flight and apprehension while possessing crack cocaine and a handgun. Before the evidence was introduced, a limiting instruction was read to the jury.

Kent acknowledges that the first two requirements for admissibility are met. *See* **United States v. Brown**, 923 F.2d 109, 111 (8th Cir. 1991) (evidence of other instances of possession of crack cocaine relevant to prove intent where defendant

charged with possession with intent to distribute). He argues that the third requirement, proof by a preponderance of the evidence, was not met with regard to the testimony that he carried a handgun, because that part of the earlier charge was dropped. The third requirement is met if "the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant was the actor." *United States v. Williams*, 895 F.2d 1202, 1205 (8th Cir. 1990). The officer's credibility was for the jury to evaluate. *See United States v. Yerks*, 918 F.2d 1371, 1373 (8th Cir. 1990). If found credible, the officer's testimony is enough to find that Kent possessed a gun. *See id.* (testimony of drug users that defendant previously sold them crack cocaine, if believed, would permit finding that defendant engaged in prior distribution).

Kent contends that the fourth requirement is not met because evidence of his prior crimes is too prejudicial. "[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." **Fed. R. Evid. 403**. Evidence of Kent's prior convictions is not unfairly prejudicial. *See United States v. Loveless*, 139 F.3d 587, 593 (8th Cir. 1998) (evidence of prior drug distribution not unfairly prejudicial in drug prosecution); *United States v. McCarthy*, 97 F.3d 1562, 1573 (8th Cir. 1996) (evidence that defendant previously smuggled marijuana not unfairly prejudicial in conspiracy to distribute marijuana prosecution); *United States v. Crump*, 934 F.2d 947, 955 (8th Cir. 1991) (evidence that state representative gave drugs in exchange for sex with much younger female not unfairly prejudicial in drug prosecution). "Moreover, this Court has 'been reluctant to find that the evidence was unfairly prejudicial when the district court gave an appropriate limiting instruction, instructing the jury not to use the evidence as proof of the acts charged in the indictment.'" *Loveless*, 139 F.3d at 593, *citing McCarthy*, 97 F.3d at 1573. The district court did not abuse its discretion in admitting evidence of Kent's prior crimes.

B.

The DNA expert testified at trial that one of the crack cocaine bags found in Amy Doyle's room had a mixture of at least two people's DNA on it, one male and one female. The male DNA was consistent with Kent's (all 12 of Kent's Y chromosome alleles from his swab were present on the Y chromosome alleles on the crack bag). The expert could not testify that Kent was definitely the contributor of the DNA, however, because all males in Kent's family have the same marker on their Y chromosomes. The expert's opinion, therefore, was only that Kent could not be excluded as a contributor of the DNA. Kent objects to this testimony as irrelevant.

Expert testimony is admissible if it will "assist the trier of fact." **Fed. R. Evid. 702**. Evidence is relevant if it will have any tendency to make the existence of any fact of consequence more or less probable than it would be without the evidence. **Fed. R. Evid. 401**. "The district court enjoys broad discretion in its determination of relevancy." *United States v. Robertson*, 387 F.3d 702, 704 (8th Cir. 2004). "[A] 'cannot exclude' finding can tell a lot, and can increase the probability that the person's DNA is present." *United States v. Mitchell*, 502 F.3d 931, 970 (9th Cir. 2007), *petition for cert. filed*, No. 07-9351 (Feb. 11, 2008) . It was not an abuse of discretion to admit the expert's opinion that Kent could not be excluded as a DNA contributor.

IV.

Kent asserts that his motion for judgment of acquittal on Counts II through VII should have been granted. This court reviews the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the verdict. *United States v. Bower*, 484 F.3d 1021, 1025 (8th Cir. 2007). Reversal of a conviction is proper only

if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. ***Id.***

### A.

Kent argues that the convictions for possession of more than 50 grams of crack cocaine with intent to distribute (Count III) and felon in possession of a firearm (Count V) should be reversed because the drugs and gun were found in Amy Doyle's bedroom. Kent's only argument is that no reasonable jury could have found that he possessed the contraband.

Possession, for both offenses, may be either actual or constructive. *See* ***United States v. Claybourne***, 415 F.3d 790, 795 (8th Cir. 2005) (possession of a firearm); ***United States v. Robertson***, 519 F.3d 452, 455 (8th Cir. 2008) (possession of drugs). "To constructively possess contraband, the defendant must know of it and have the intent and ability to exercise control over it or the place where it is kept." ***Robertson***, 519 F.3d at 455.

Amy Doyle testified that she and Kent had a relationship, and he started sleeping in her bedroom every night in February 2006. She also stated that the gun and drugs found in her room belonged to Kent, that she had seen him sell drugs many times, and that he always wiped the gun down before putting it away. Kent challenges Amy's statements, emphasizing that she admitted initially lying to the police about her knowledge of the drugs and gun. "[T]he jury has sole responsibility for resolving conflicts or contradictions in testimony, and we must resolve credibility issues in favor of the verdict." ***United States v. Spears***, 454 F.3d 830, 832 (8th Cir. 2006).

In addition to Amy's testimony, the government showed that Kent's clothing, DVD's, and time slips were found in the room, and that Kent's DNA was on cigarette butts and bed sheets taken from the room. Amy's testimony supports Kent's knowledge of the gun and drugs, and her testimony and the physical evidence support Kent's control over her room. The jury could have reasonably determined that Kent constructively possessed the gun and drugs found in the room. *See* ***United States v. Johnson***, 474 F.3d 1044, 1049 (8th Cir. 2007) (defendant constructively possessed guns and drugs found in a room with his state ID and cable bill, and there was testimony that he stayed there one or two nights a week); ***United States v. Evans***, 431 F.3d 342, 345 (8th Cir. 2005) (defendant constructively possessed gun found in his girlfriend's car, which she testified he drove often); ***United States v. Boyd***, 180 F.3d 967, 978-79 (8th Cir. 1999) (defendant constructively possessed firearm found in a room containing his clothing and ID, and his girlfriend testified that he stayed in the room).

B.

In order to obtain a conviction for possession of a firearm in furtherance of a drug trafficking crime (Counts II and IV), the government must prove a nexus between the possession of the firearm and the underlying drug crime. ***United States v. Close***, 518 F.3d 617, 619 (8th Cir. 2008). "[T]he jury may infer that the firearm was used in furtherance of a drug crime when it is kept in close proximity to the drugs, it is quickly accessible, and there is expert testimony regarding the use of firearms in connection with drug trafficking." ***Id.***

Kent argues that the government failed to prove that the gun he possessed was in furtherance of a drug trafficking crime. The evidence supporting the conviction on Count II included Kent's possession of ten rocks of crack cocaine in one pocket, and

a loaded firearm in the other.  The evidence supporting the conviction on Count IV included crack cocaine, cash, and the loaded firearm — all found in the bedroom where he was staying.  The government also provided testimony from a DEA agent, related to both counts,  that drug dealers often carry weapons to protect their drugs, their money, or themselves.  Given the guns' close proximity to the drugs and the agent's testimony, it was reasonable for the jury to infer that Kent possessed the guns in furtherance of drug trafficking crimes.  *See **Johnson***, 474 F.3d at 1049-50 (evidence sufficient for conviction where defendant had drugs in pocket, and gun found in defendant's bedroom); ***Close***, 518 F.3d at 619 (evidence sufficient for conviction where guns found in bedroom with drugs, scales, and cash, and there was testimony that drug dealers use guns to protect their money and drugs); ***United States v. Sanchez-Garcia***, 461 F.3d 939, 946-47 (8th Cir. 2006) (evidence sufficient for conviction where gun found in bedroom adjacent to kitchen where drugs found and expert testified to use of guns to protect drugs).

### C.

In order to obtain a conviction for possession of child pornography, the government must prove that the defendant knowingly possessed a visual depiction of a minor engaging in sexual conduct, and the depiction was produced using materials that had been transported in interstate commerce.  **18 U.S.C. § 2252 (A)(a)(5)(B)**; ***United States v. White***, 506 F.3d 635, 641 (8th Cir. 2007).  Production of child pornography requires the government to show that the defendant knowingly used a minor to engage in sexual conduct, for the purpose of producing a visual depiction, and that the production materials had been transported in interstate commerce.  **18 U.S.C. § 2251(a)**.

The government's evidence for both child pornography charges included the following: a photo of Kent and Amy having sex retrieved from Kent's cell phone;

Amy's testimony that Kent asked her to have sex with him in order to take the photo, she told Kent that she was 16, and she was with Kent when he bought the phone; Kent claimed the phone from the Mississippi County Jail; and the phone was produced in Korea and moved in interstate commerce.  Kent argues that Amy is not credible, and therefore, no reasonable jury could have found guilt beyond a reasonable doubt.  The jury determines credibility, and that determination is "virtually unreviewable on appeal."  *United States v. Johnson*, 519 F.3d 816, 822 (8th Cir. 2008).  The jury found Amy credible, and therefore could have reasonably found Kent guilty on both child pornography charges.  *See United States v. Rayl*, 270 F.3d 709, 713-15 (8th Cir. 2001) (sufficient evidence to convict defendant of production and possession of child pornography based on the testimony of the minor that defendant forced her to undress while he took nude pictures of her).

V.

Kent challenges the jury instructions on possessing a gun in furtherance of a drug trafficking crime (Counts II and IV).  Jury instructions are reviewed for an abuse of discretion, and upheld if taken as a whole, they fairly and adequately instruct the jurors on the applicable law.  *United States v. Jennings*, 487 F.3d 564, 580 (8th Cir. 2007).

Under 18 U.S.C. § 924(c), "any person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, or who in furtherance of any such crime, possesses a firearm, shall" be sentenced to at least 5 years in addition to the punishment for the crime of violence or drug trafficking crime.  **18 U.S.C. § 924(c)(1)(A)**.  These are two separate crimes: (1) carrying or using a firearm during and in relation to a crime of violence or drug trafficking crime; and (2) possessing a firearm in furtherance of a crime of violence or drug trafficking crime.  *United States v. Gill*, 513 F.3d 836, 850 (8th Cir. 2008); *United States v. Gamboa*, 439 F.3d 796, 810 (8th Cir. 2006).  Kent was charged with the second, possessing a

firearm in furtherance of a drug trafficking crime. "'[I]n furtherance of' requires a slightly higher standard of participation than the language 'during and in relation to,' such that 'during and [sic] relation to' is encompassed by the broader language 'in furtherance of.'" *Gamboa*, 439 F.3d at 810.

The district court followed the Eight Circuit Model Jury Instruction on "possess in furtherance of," over Kent's objection. The instruction as given to the jury read:

> The phrase "possess in furtherance of" means the firearm must have some purpose or effect with respect to possession with intent to distribute crack cocaine; its presence or involvement cannot be the result of accident or coincidence. The firearm must facilitate or have the potential to facilitate the offense of possession with intent to distribute crack cocaine.

Kent objects to the phrase "or have the potential to facilitate" because "it allows a jury to convict a defendant under 924(c) even if the Government fails to provide evidence that the weapon was actually used to facilitate a drug offense."

"The term 'furtherance' as used in § 924(c) should be given its plain meaning, 'the act of furthering, advancing, or helping forward.'" *United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003), *quoting United States v. Lomax*, 293 F.3d 701, 705 (4th Cir. 2002). "In furtherance of" is not a factual requirement that the firearm advance the crime, but rather a requirement that the person possess the gun with the *intent* of advancing the crime. *See Hamilton*, 332 F.3d at 1149 ("The evidence tended to show that Hamilton's shooting at his customers was *intended* to frighten them into returning approximately four ounces of cocaine that he believed one of them had stolen.") (emphasis added). The statute authorizes conviction where the defendant intended the firearm to advance or further the crime, but it did not actually do so.

-15-

Although the jury instruction is not erroneous for the reason asserted by Kent, it misstates the law for another reason. In *Smith v. United States*, the Supreme Court stated:

> "in relation to" thus, at a minimum, clarifies that the firearm must have some purpose or effect with respect to the drug trafficking crime; its presence or involvement cannot be the result of accident of coincidence. As one court has observed, the "in relation to" language "allay[s] explicitly the concern that a person could be" punished under § 924(c)(1) for committing a drug trafficking offense "while in possession of a firearm" even though the firearm's presence is coincidental or entirely "unrelated" to the crime. Instead, the gun at least must "faciliat[e], or hav[ve] the potential of facilitating," the drug trafficking offense.

*Smith*, 508 U.S. 223, 238 (1993) (citations omitted).

This is almost the precise language used in the jury instruction defining "in furtherance of." In fact, the Note on Use following the Eighth Circuit Model Jury Instruction states that the "Committee believes that the language 'during and in relation to' . . . and the phrase 'in furtherance of' . . . were intended by Congress to be co-extensive." **Model Crim. Jury Instr. 8th Cir. 6.18.924C, n. 9 (1998)**.

This circuit has since determined that "in furtherance of" is a slightly higher level of participation than "during and in relation to." *See Gamboa*, 439 F.3d at 810. Because the instruction would allow the jury to convict on the lesser finding of "in relation to", this jury instruction is erroneous. *Cf.* **United States v. Savoires**, 430 F.3d 376, 380-81 (6th Cir. 2005) (jury instructions erroneous because they allowed jury to convict for possession "during and in relation to," rather than "in furtherance of," a drug trafficking offense). *See also* **Pope v. Illinois**, 481 U.S. 497, 500-01 (1987) (jury instruction in obscenity trial unconstitutional because it allowed jury to convict on finding of no literary, artistic, political, or scientific value under a lower "community standard" rather than a "reasonable person" standard).

In response to Kent, the government argues that in *United States v. Gill*, 513 F.3d 836, this court approved the jury instruction at issue here. Gill was charged with "carrying" a gun "during and in relation to" a drug trafficking offense. ***Gill***, 513 F.3d at 850. The jury instructions mistakenly listed the standard of participation as "in furtherance of." *Id.* at 851. The issue presented and decided was whether there was a constructive amendment of the indictment. *Id.* This court found that the "in furtherance of" instruction – rather than "during and in relation to" – did not affect Gill's substantial rights because "the instructions required the jury to find a *higher* level of participation than the charged offense." *Id.* at 852. The holding in *Gill* does not control here where the instructions allow the jury to find a *lower* level of participation than the charged offense. Further, although the particular instruction at issue here was given in *Gill*, this court did not address the definition of "in furtherance of." *See* ***Webster v. Fall***, 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Kent did not object, either at the district court or on appeal, to the jury instruction on this ground. Therefore, this court may reverse only if the error constitutes plain error. *See* ***United States v. Young***, 702 F.2d 133, 136 (8th Cir. 1983) ("The failure to object to a jury charge in a timely and *specific* manner results in waiver of objection on appeal.") (emphasis added), *citing* **Fed. R. Crim. P. 30(d)** (objections to jury instructions must be timely and specific, and failure to object in this manner precludes appellate review except for plain error); ***United States v. Bruno Makes Room For Them***, 496 F.2d 507, 509 (8th Cir. 1974) (plain error review where objection below failed to specify the grounds now claimed). Reversal under plain error review requires the defendant to show (1) there was error, (2) that was plain, and (3) affected substantial rights. ***United States v. Olano***, 507 U.S. 725, 736 (1993); ***United States v. Barth***, 424 F.3d 752, 764 (8th Cir. 2005). Further, this court may correct plain error only if (4) "the error 'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Olano*, 507 U.S. at 736, *quoting* ***United States v. Atkinson***, 297 U.S. 157, 160 (1936).

Due to *Gamboa,* the error here is plain.  *See* **Olano**, 507 U.S. at 734 (plain means clear under current law).  In order to affect substantial rights, the error must have been prejudicial.[3]  *Id.*; **United States v. Dominguez Benitez**, 542 U.S. 74, 83 (2004).  An error is prejudicial if the defendant shows "a reasonable probability that, but for [the error claimed], the result of the proceeding would have been different." **Dominguez Benitez**, 542 U.S. at 82, *quoting* **United States v. Bagley**, 473 U.S. 667, 682 (1985).  Reasonable probability is not the same as proof by a preponderance of the evidence.  **Dominguez Benitez,** 542 U.S. at 83 n. 9.  The defendant's burden is to "satisfy the judgment of the reviewing court, informed by the entire record, that the probability of a different result is 'sufficient to undermine confidence in the outcome' of the proceeding."  *Id.* at 83, *quoting* **Strickland v. Washington**, 466 U.S. 668, 694 (1984).

"In furtherance of" is only a *slightly* higher standard than "during and in relation to."  *See* **Gamboa**, 439 F.3d at 810.  *Compare* **Hamilton**, 332 F.3d at 1149 (defining "furtherance" as "the act of furthering, advancing, or helping forward"), *with* **United States v. Abuelhawa**, 523 F.3d 415, 420 (4th Cir. 2008) (defining "facilitate" as "to make easier"), *citing* **United States v. Binkley**, 903 F.2d 1130, 1135 (7th Cir. 1990).  Given the evidence against Kent, it is a close question whether Kent has met his burden.  *Compare* **United States v. DeRosier**, 501 F.3d 888, 899 (8th Cir. 2007) (no prejudice on jury instruction missing the phrase "affecting a financial institution" where evidence showed financial institution affected by defendant's fraud), *and* **United States v. Rice**, 449 F.3d 887, 896 (8th Cir. 2006) (failure to define intent to defraud not prejudicial where evidence of guilt overwhelming), *with* **Savoires**, 430 F.3d at 381 (jury instructions allowing jury to convict on possession "during and in relation to" a drug trafficking offense constitutes plain error).  This court need not determine whether Kent was prejudiced, however, because he cannot meet the fourth *Olano* requirement.

---

[3] At least so long as the error is not structural.  *See* **Olano**, 507 U.S. at 735 ("There may be a special category of forfeited errors that can be corrected regardless of their effect on the outcome.").  The error here is not structural.  *See* **Neder v. United States**, 527 U.S. 1, 9 (1999) ("We have often applied harmless-error analysis to cases involving improper instructions on a single element of the offense.").

"Rule 52(b) is permissive, not mandatory. If the forfeited error is 'plain' and 'affects substantial rights,' the court of appeals has authority to order correction, but is not required to do so." *Olano*, 507 U.S. at 735. *See also* *Yakus v. United States*, 321 U.S. 414, 444 (1944) ("No procedural principle is more familiar to this Court than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make a timely assertion of the right before a tribunal having jurisdiction to determine it."). Kent did not argue this specific error at the district court, nor on appeal. "To correct the error, we would have to notice *sua sponte* that the district court did not act *sua* sponte to provide a [reason for striking the] jury instruction that the defendant should have provided." *Swipes v. Kofka*, 419 F.3d 709, 717 (8th Cir. 2005) (declining to correct erroneous jury instruction because defendant did not raise the correct theory below, on appeal, or adopt it at argument). This would "blur the line" between an adversarial and inquisitorial system of justice. *Id.* Correction here would adversely affect the integrity and public reputation of the proceedings. Kent's convictions on Counts II and IV are affirmed.

## VI.

Finally, Kent challenges his mandatory life sentence under 21 U.S.C. § 841(b) as violating the Eighth Amendment. Kent urges this court to "reconsider its prior precedent and hold that a life sentence for drugs is indeed cruel and unusual punishment." In *United States v. Jones*, 965 F.2d 1507, 1517 (8th Cir. 1992) and *United States v. Harvey*, 946 F.2d 1375, 1378 (8th Cir. 1991), this court ruled that a mandatory life sentence under 18 U.S.C. § 841(b)(1)(A) does not violate the Eighth Amendment. "[A] panel of this Court is bound by a prior Eight Circuit decision unless that case is overruled by the Court sitting en banc." *United States v. Wright*, 22 F.3d 787, 788 (8th Cir. 1994). Additionally, the Supreme Court has ruled that a mandatory life sentence under state law, for a first-time drug dealer convicted of possessing over 650 grams of cocaine, does not violate the Eighth Amendment. *See Harmelin v. Michigan*, 501 U.S. 957 (1991); *Harvey*, 946 F.2d at 1378 (recognizing the Court did not agree on the degree of proportionality required under the Eight

Amendment, but that a majority agreed that the sentence was constitutional).  Kent's mandatory life sentence is not cruel and unusual.

## VII.

The judgment and sentence of the district court are affirmed.

_____